By the Court.—Sedgwick, J.
Under the answer *138 the defendants conld only satisfy their liability to plaintiffs by showing that .the goods had been stolen Avithont fault on their part. They were not confined to proving that the theft was by some one who had burglariously entered the store. A felonious or burglarious entry was not substantially connected Avith the defense of stealing, and an allegation of it might be disregarded. But, on the proofs, the defendants were limited to the fact of the larceny having been committed by some one who had concealed himself on the premises before the night of October 23, or Avho had burglariously entered on that night, and before the morning of the 24th.
If the defendants proved that this theft happened in spite of due care, used by them to prevent such an occurrence, the plaintiff had no cause of action. The learned judge held that they had shown, by the pre-. ponderance of testimony," that they had made all the arrangements, and used all the precautions that are made and used by owners ordinarily prudent and intelligent under similar circumstances, and therefore that a verdict for the defendants should be directed. The learned counsel for the plaintiff urges, that arrangements and precautions of this kind can only be learned from actual experience of business and change from time to time, and that though a judge can, from the evidence, say whether a proposition, the elements of which are sworn to before him, is established by the preponderance of proof, he has no special qualification or faculty for ascertaining what are the customs and habits of warehousemen and what devices and safeguards they employ. If he know (by presumption of law) what is done generally by prudent owners to guard their property, then he should always pass upon the question of negligence when there is no dispute as to what was done by a defendant.
Against this, however, it may properly be observed, *139 that there are some means, the fitness of which to protect property may be matter of common knowledge, and it may be taken to be true, that ordinary persons would use only common knowledge; for example, when a theft has been committed by breaking a door, proven to be of thick wood with strong hinges, bolts and bars, a judge could say as well as a juryman, that such a door was one that persons of common prudence would use. It would be suited to resist a thief, and common prudence would not ask for more. Therefore, in Coleman v. Livingston (36 N. Y. Super. Ct. 32, afterwards affirmed, without an opinion, 56 N. Y. 658) it was decided, that when a burglary had been committed through a scuttle in the roof, the judge should have, on the trial, dismissed the complaint, because the evidence showed that the scuttle was strong and strongly fastened. And in this case we would have to sustain the direction to the jury, if the testimony had been undisputed that the theft had been committed by breaking open from the outside the shutters on the first floor; for those shutters were strong, and .strongly secured by bars, hook and staple. This would be the necessary result, at least, if it were held as matter of law, that it was not a question for the jury as to whether it was defendant’s duty to have a night-watchman to be an additional safeguard against thieves. On this particular point, there are, I think, two satisfactory considerations. First. If common prudence calls for some watch, the legal presumption should be, that the law has provided in the public watch a sufficient guard against criminals under ordinary circumstances. Second. If the situation of the store and the property is extraordinary, and calls for additional watch, the burden of proof is, upon the bailor to show the exceptional state of affairs, and in this case, by the proof, the jury would have been bound to find, that ware- *140 housemen, generally, were adequately protected by the police.
These considerations are not conclusive, because the evidence admitted the inference that the theft had been committed by a person who had hidden and been locked in, in the store, on the day before. Then to justify a decision as matter of law, it must appear, conclusively, that the means used to prevent such an occurrence were those used for the purpose by owners of like property in like circumstances.
There might be perhaps a case where it was affirmatively shown that everything was done that could be suggested as proper by the opposite party on the trial, and counsel could not naturally point out a defect in the arrangement. It cannot be supposed that a jury would justly be able to find a defect, and they should not be directed to proceed arbitrarily and to uncertainties.
But in the present case, under the evidence, it cannot be said with certainty that the arrangements, from their intrinsic character, were all that could ordinarily be used or would ordinarily be effective to exclude persons with evil intent, or to discover and expel them after they had gained entrance, and perhaps had concealed themselves. If something more, that was not on its face an extraordinary precaution, could have been done, and would have tended to prevent the particular contingency, it seems to me that a jury alone could say whether, as matter fact, owners of property use such a precaution. ISTor, on the facts, in my opinion could a judge say as a matter of law, that what was done was all that ordinary prudence would set up to meet the liklihood of a thief attempting to intrude.
The proof shows that the defendants had in mind the danger, and it may be assumed that owners of property would have it in mind. The risk was that some one would use cunning, trick or imposition to get *141 in and steal, and would craftily elude observation. It must be the law, that ordinary prudence should adapt its care to the particular risk; and the question on the trial was, had the defendants made arrangements suited not for a general observation and scrutiny of those that would come in with an honest purpose in the ordinary run of events, but suited for the detection of thieves.
I do not mean to say that there was in fact, any particular defect in any part of the defendant’s system, nor that the evidence shows any general imprudence nor that the defendants were responsible for the incidental negligence of any of their servants, such as leaving a door open ; but the defendants have responsibility in regard to the general arrangements of their warehouse and business, the number of servants they employ, and the duties and stations they give them, in view of the contingencies of the business. The defendants were conscious of the propriety of seeing that no one came in without a right to enter. The witnesses for the defendants, whose testimony was candid and intelligent, said that there was a constant observation of the persons who came in through the front doors, but there was no specific statement on this point as to the time immediately before the theft. This is not a simple fact that must be taken to be true because honest witnesses swear to it. One or more may make a mistake as to whether the defendant’s directions and practice had resulted in or was calculated to result in a continuous observation without a lapse in which strangers might go in at will. Bach‘witness could only speak for himself. There might be a default in. his memory, and it was a question of fact whether the manner of conducting business permitted with reasonable certainty a continuous watch at the front doors.
There was a rear door, which the evidence showed was generally shut. Many witnesses proved that they *142 never saw it open, unless it was in charge of somebody. It could not be opened from the.outside, after it had been closed. The learned judge in Ms charge state? 'that it closed with a spring bolt. The testimony further showed that there was a bar inside, probably used as a defense at night. There was no evidence that this door could not at all times be opened from the inside by any one. The plaintiff gave evidence that at some time not fixed, and on two occasions, this door was open and unguarded. If the defendants had conclusively shown due care (so far as the case was affected by the situation and management of this door), the fact of its having been open on two isolated occasions would have had no particular weight. I" do not think they gave conclusive evidence of such care. So far as their servant’s negligence in leaving on any particular occasion the door open is concerned, they would not be responsible if they had exercised ordinary care in choosing their workman; although, perhaps, they were bound to make a proper provision against that negligence, which may be accidental in the single instance, but is in a proportion of cases inevitable, on the part of workmen, in a large and hurried business. The door could be opened on the inside, and by persons rightfully in the warehouse, not servants: It was consistent with the full force of defendant’s evidence, that it might be so opened, without any arrangement for the observation of such an occurrence. Even if it were at once closed, there was opportunity for a thief to slip in. There was no conclusive evidence that this opportunity could not or did not happen often, and the defendants were bound in their.business to make arrangements for what might frequently happen.
It is said that there is no proof that the thief came through this door. Indeed, there was no proof that the thief came through other doors. If the thief were not a servant,—and this was not urged or suggested *143 upon the trial,—it was as likely that a thief would watch and get in by the rear door at a favorable opportunity, as by the front door, where there were more people. The burden was on the defendants to show the loss, and how it happened, and that due care was used against the particular occurrence, or else to show that due care was used as to every way in which it might have happened.
On the whole case, I am of opinion that the plaintiff had a right to go to the jury for their verdict whether the guard was sufficient, which consisted of the observation of the employees, as they were transacting the general business, or whether common prudence called upon defendants to make it the special, if not sole duty of some one to be on the watch. In addition, the jury should have been asked to consider if, under the circumstances in proof, there was any likelihood of a thief being concealed at night; whether the likelihood was of that character that ordinary,prudence demanded, at the time of closing, that search should be made for a lurking thief, or that the defendant should have instructed his servants to make regular examination. It may be that the character of the business was such that a thorough search could not be made ; and of course that is one of the circumstances which the jury would look at.
For these reasons I consider that the doubt the learned judge entertained, when he directed the exceptions to be heard here, was well founded, and that the exceptions should be sustained, the verdict set aside, and a new trial had, with costs to the plaintiff to abide the event.
Sanford, J., concurred.